# In the United States Court of Federal Claims

No. 15-785C
(Issued Under Seal: September 1, 2015)[1]
(Re-Issued: September 17, 2015)

|  |  |  |
|---|---|---|
| TENICA & ASSOCIATES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) ) | Bid Protest Jurisdiction; 28 U.S.C. § 1491(b)(1); Preliminary Injunction; Mootness; Ripeness; Standing |
| Defendant, | ) ) | |
| INTERACTIVE GOVERNMENT HOLDINGS, INC., | ) ) ) ) | |
| Defendant-Intervenor. | ) ) | |

James S. DelSordo, Manassas, VA, for plaintiff. James S. Phillips and Julie M. Nichols, Manassas, VA, of counsel.

Michael D. Austin, Trial Attorney, with whom were Douglas Mickle, Assistant Director, Robert E. Kirschman, Jr., Director, and Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Hattie DuBois and William Moorhouse, Defense Human Resource Activity, of counsel.

David E. Fletcher, Washington, DC, for defendant-intervenor. Christopher J. Kimball, Erin M. Estevez, and Thomas O. Mason, Washington, DC, of counsel.

---

[1] This Opinion & Order was originally filed under seal on September 1, 2015. See ECF No. 33. Publication was deferred until the parties' review for redactions of protected material. The parties did not identify any material for redaction.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

      In this bid protest case, TENICA & Associates, LLC (TENICA) challenges actions taken by the Department of Defense, Defense Human Resources Activity (DHRA) to procure support staff services for the Family Employer Programs and Policy Office (FEPP), a component of the DHRA. This matter is before the court on plaintiff's motion for preliminary injunction. Dissatisfied with the procurement process, plaintiff seeks to enjoin DHRA from allowing performance of the contract awarded to Interactive Government Holdings, Inc. (IGH), while the agency conducts a reevaluation as recommended by the Government Accountability Office (GAO).

I.      Background

      On October 9, 2014, DHRA issued, as a small business set-aside, Request for Proposals No. H98210-15-R-0001 (RFP) to provide support staff services for operations at FEPP. The FEPP is comprised of three "critical programs [designed to] address under/unemployment faced by the men and women in the [Navy] Guard and [Army] Reserves." Liedel Decl. ¶ 18, App. to Def.'s Resp. A1–A6, Aug. 5, 2015, ECF No. 27-1. The contract awarded under the RFP is intended to provide service support in all 50 states and the District of Columbia to the Employer Support of the Guard and Reserve (ESGR), Yellow Ribbon Reintegration Program (YRRP), and the Employment Initiative Program (EIP). Id.; see also Compl. ¶ 5, Jul. 24, 2015, ECF No. 1 (citing RFP 7).

      The RFP contemplates the award of a fixed-price contract for a one-year base period and two one-year option periods. The award is to be made to the offeror submitting the proposal deemed to offer the best value to the government on the basis of price and two non-price considerations. See Metis Sols., LLC, B-411173.2 et al., 2015 WL 4572442, at *1 (Comp. Gen. Jul. 20, 2015) (citing RFP 6, 70–73).

      The contract to be awarded under the RFP would consolidate two prior contracts. Liedel Decl. ¶ 7. IIF Data Solutions, Inc. (IIF Data), an entity described by plaintiff as its "teaming partner," see 1st Patten Decl. ¶ 3, Jul. 24, 2015, ECF No. 6, performed one of the prior contracts, Liedel Decl. ¶ 7. Under that contract, IIF Data provided "administrative and program support technicians." Id. The support furnished under that contract comprises approximately 60% of the support to be furnished under the contract to be awarded pursuant to the RFP. Id. Under the other prior contract, A-Team Solutions, LLC (A-Team Solutions) provided "employment coordinator support" services for FEPP. Id. The support furnished under that contract comprises approximately 40% of the contract to be awarded in conformance with the RFP. Id.

2

The agency received "a large number" of proposals in response to the RFP. Metis Sols., 2015 WL 4572442, at *2. Following a troubled procurement process, see, e.g., Pl.'s Reply 3–6, Aug. 10, 2015, ECF No. 29, the agency awarded the contract on April 1, 2015 to IGH, Liedel Decl. ¶ 4, and IGH readied itself to begin performance.

After debriefing, several disappointed bidders (including plaintiff) challenged the contract award at GAO. See Metis Sols., 2015 WL 4572442, at *1; Liedel Decl. ¶ 5. To permit resolution of the protests at GAO, the agency issued, on April 13, 2015, a stop performance order to IGH. See Liedel Decl. ¶ 6. Consistent with its statutory obligation to decide bid protests within 100 days, 31 U.S.C. § 3554(a)(1), GAO looked to issue its decision by July 20, 2015, Liedel Decl. ¶ 5.

While performance by IGH was stayed, the incumbent contractors IIF Data and A-Team Solutions performed the work required under the contract pursuant to a series of extensions. See id. ¶¶ 9–10. As extended, the two prior contracts expired on July 20, 2015, the statutorily-imposed deadline for the issuance of GAO's decision. Id. ¶ 8; see also 2nd Patten Decl. ¶ 2, Aug. 10, 2015, ECF No. 29-1.

The various protests at GAO were brought on the grounds that the agency misevaluated the proposals and made an unreasonable source selection decision. See Metis Sols., 2015 WL 4572442, at *1. GAO sustained the protests in its July 20, 2015 decision,[2] finding:

> [that the] record fail[ed] to show that [the] agency had a reasonable basis for its evaluation of proposals[; that the agency's] evaluation was not consistent with the terms of the solicitation; and [that the] agency's source selection decision failed to make a reasoned comparison of [the] proposals or [to] articulate why [the] award to the selected firm was reasonable.

Id. Identifying as its "principal areas of concern—the agency's technical evaluation, past performance evaluation and source selection decision," id. at *2, GAO recommended "that the agency reevaluate [all of the received] proposals and make a new source selection decision in a manner consistent with [its] discussion" regarding the noted areas of concern, id. at *13.

GAO also recommended that if the agency found on reevaluation that "a proposal other than the one submitted by IGH represents the best value to the government, . . . the agency [should] terminate the contract awarded to IGH for the convenience of the government, and make [an] award to the newly-selected offeror." Id.

---

[2]   Nearly two weeks earlier, GAO denied a protest challenging the contract award to IGH on a small business issue. See Task Source/Military Pers. Servs. Corp. FFEP, LLC, B-411173.3, 2015 WL 4235302 (Comp. Gen. Jul. 8, 2015).

GAO further recommended that the agency pay the protesters their costs for filing and pursing the protests, including reasonable attorneys' fees. See id. (citing 4 C.F.R. § 21.8(d)(1)). GAO counseled the protestors to "submit their respective certified claims for costs, detailing the time expended and cost incurred, directly to the contracting agency within 60 days after receipt of this decision." Id. (citing 4 C.F.R. § 21.8(f)(1)).

On July 21, 2015, in response to the GAO's decision, the Contracting Officer initiated corrective action by "reconstitut[ing] the Technical Evaluation Board (TEB)". Liedel Decl. ¶ 16. Shortly thereafter, the TEB began the Source Selection process. Id. As the Contracting Officer stated in her filed declaration, the reevaluation is expected to be complete and the final decision is expected to be made by September 30, 2015, the last day of the fiscal year. Id.

To maintain support staff services for FEPP while the agency undertook the recommended reevaluation, the Contracting Officer decided, on July 22, 2015, to lift the stay put into place during the GAO protests and to allow IGH, as the contract awardee, to reinstate its work-readiness efforts. Id. ¶ 17; see also Sanders Decl. ¶ 4, Aug. 5, 2015, ECF No. 28-1 (describing notice to IGH of the agency's intention to comply with GAO's recommendation and the direction to IGH to resume contract performance pending reevaluation of proposals). As of early August 2015, "IGH ha[d] restarted its performance and ha[d] on-boarded 90% of the 170 potential employees that ha[d] been waiting to go to work." Liedel Decl. ¶ 17.

Plaintiff filed this bid protest action on July 24, 2015. See ECF No. 1. Plaintiff also filed a declaration from the owner of IIF Data, see 1st Patten Decl., ECF No. 6, its purported "teaming partner," see id. ¶ 3. Plaintiff seeks injunctive relief. See ECF No. 4 (preliminary injunction), ECF No. 5 (temporary restraining order) (collectively, plaintiff's motion for a preliminary injunction or Pl.'s Mot.);[3] see also Pl.'s Mem., ECF No. 4-1 (supporting memorandum). In addition, plaintiff asks the court (1) to "enter judgment in favor of [itself] against the United States;" (2) to "award . . . reasonable costs and attorneys' fees;" and (3) to grant "such further legal and equitable relief . . . deem[ed] appropriate." Compl. 9.

The court held a telephonic status conference with the parties on July 27, 2015. See Order, Jul. 27, 2015, ECF No. 11. At the parties' request, the court agreed to address plaintiff's request for preliminary injunctive relief before considering the merits of the protest. Id. at 1; see also id. at 2 (holding in abeyance the filing of the administrative record, and the parties' briefing for judgment on that record, pending the court's ruling on

---

[3]   Although styled differently, the two motions appear to be identical, and both ask "the [c]ourt to enjoin the [DHRA] from ignoring the recommendation of the [GAO]." See ECF Nos. 4–5, at 1.

plaintiff's request for injunctive relief).[4]  Later that day, the court entered a briefing schedule, see id. at 1–2, and a protective order, see ECF No. 10.  On July 28, 2015, IGH filed a motion to intervene in the action, see ECF Nos. 15–17, which the court granted that same day, see ECF No. 18.

Defendant and defendant-intervenor filed their responses to plaintiff's request for a preliminary injunction on August 5, 2015.  See Def.'s Resp., ECF No. 27; Def.-Int.'s Resp., ECF No. 28.  Accompanying the filed responses were declarations from the Contracting Officer, see Liedel Decl., ECF No. 27-1, and the president of IGH, see Sanders Decl., ECF No. 28-1.  Plaintiff filed its reply on August 10, 2015.  See Pl.'s Reply, ECF No. 29.  With its reply, plaintiff filed another declaration from the owner of IIF Data, see 2nd Patten Decl., ECF No. 29-1, and a declaration from the president and CEO of TENICA, see Scherling Decl., ECF No. 29-2.

The court heard oral argument on August 13, 2015.  See Tr. of Oral Arg., Aug. 13, 2015, ECF No. 32.  The matter is now ripe for decision.

II.     Plaintiff's Challenges

In its complaint, plaintiff seeks to enjoin "DHRA from continuing performance of any contract awarded to IGH under the Solicitation until the [a]gency has performed a re-evaluation of the offers submitted in response to the Solicitation."  Compl. 9.  As clarified in its briefing and at oral argument, plaintiff specifically challenges the agency's decision to allow IGH to begin contract performance, rather than to extend the terms of the prior contracts.  Frustrated by the "tortured history" of this particular procurement process, plaintiff also challenges the agency's prior contract award to IGH.  And pointing to the flaws in the agency's original procurement effort, plaintiff challenges the agency's corrective effort to reevaluate the submitted proposals.

Plaintiff effectively sets forth three discrete subjects for protest:  (1) the original contract award to IGH; (2) the reevaluation of the proposals; and (3) contract performance by IGH during the reevaluation period.  Defendant and defendant-intervenor argue that plaintiff's protest must fail on the grounds of mootness, ripeness and standing, respectively.  The court agrees.

---

[4]     During the status conference, the parties informed the court that a protest—pertaining to the extent of IGH's prime contractor involvement—remains pending before the Small Business Administration.  See ECF No. 11, at 1.  A separate protest regarding size classification already has been resolved and an 8(a) certificate has issued.  Id. at n.1.

For the reasons set forth more fully below, the court finds that plaintiff's first challenge is moot, its second challenge is not ripe, and its third challenge is beyond the scope of the court's bid protest jurisdiction. Accordingly, plaintiff's complaint is **DISMISSED**, and plaintiff's motion for preliminary injunction is **DENIED AS MOOT**.

Plaintiff's three subjects for protest are discussed in turn.

A.    Plaintiff's Objection to the Original Evaluation and to the Contract Award to IGH Are Moot

To the extent plaintiff challenges the agency's original evaluation of the proposals and contract award to IGH, see Tr. 33:16–33:24, plaintiff's protest is moot.

In Eskridge Research Corporation v. United States, the court addressed a circumstance similar to the circumstance here, stating:

> [P]laintiff's challenges to [the agency's] original evaluation of proposals are not properly before this court, [when] the relief that would otherwise be available has already been granted due to the agency's decision to re-evaluate the proposals. Therefore, because the agency has already agreed to re-evaluate the proposals, the plaintiff's claims regarding [the agency's] original evaluation of proposals and its award of the contract to [the awardee] must be dismissed as moot.

92 Fed. Cl. 88, 94 (2010) (footnote omitted).

To address the flaws that GAO identified in the original evaluation and the source selection decision, DHRA agreed to reevaluate the proposals and make a new best value determination. See Liedel Decl. ¶ 16. Such "corrective [a]ction completely and irrevocably eradicates the effects of the alleged violation[s] by putting all of the successful protesters at GAO, including TENICA, back in the competition with IGH." Def.-Int.'s Resp. 7. Thus, notwithstanding plaintiff's assertions to the contrary, plaintiff remains a candidate for the award under the RFP, even though IGH is currently performing the contract. Cf. Pl.'s Mem. 19 (asserting that "[a]bsent . . . injunctive relief, TENICA will suffer the loss of the opportunity to perform the contract under the Solicitation").

Because the earlier evaluation and source selection decision no longer present a "live" controversy for the court to resolve, any challenge to the agency's original contract award is now moot. Coastal Envtl. Grp., Inc. v. United States, 114 Fed. Cl. 124, 129 (2013) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting Powell v. McCormack, 395 U.S. 486, 496, (1969)). And a moot controversy divests the court of jurisdiction. See

B&B Med. Servs., Inc. v. United States, 114 Fed. Cl. 658, 662 (2014); see also RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Accordingly, plaintiff's protest as it relates to the original evaluation of proposals and contract award to IGH is **DISMISSED** for lack of jurisdiction.

  B. Plaintiff's Claims Regarding the Outcome of the Reevaluation Are Not Ripe

  Like plaintiff's challenge to the agency's original evaluation of proposals and contract award to IGH, plaintiff's protest of the agency's undertaken corrective action—specifically reevaluating the submitted proposals—is unfit for judicial review.[5]

  The court has previously found that "error in the corrective action process will not be ripe for judicial review until a new decision is issued." Eskridge Research Corp., 92 Fed. Cl. at 94; see also NSK, Ltd. v. United States, 510 F.3d 1375, 1384 (Fed. Cir. 2007) ("[A]n agency decision is not ripe for judicial review until the allegedly offending agency has adopted a final decision."). In this circumstance, the agency is now reevaluating proposals and intends to make a new best value determination before the end of September. Plaintiff does not dispute this. See Tr. 33:5–33:6 (acknowledging "that the [g]overnment is reevaluating these offerors"); Tr. 32:24–32:25 (stating "[plaintiff] is not quibbling . . . [about whether the agency is] going to do the reevaluation"). Rather, based on the flaws identified in the original procurement process, plaintiff calls into question the integrity of the current reevaluation process. See Pl.'s Reply 3–6 (describing the "[t]ortured [h]istory of this [p]rocurement"); id. at 3 (expressing an "utter lack of confidence . . . in the agency's evaluation process in this procurement"). Effectively, plaintiff is complaining about procurement violations that it anticipates the agency making.

---

[5] Citing the GAO bid protest regulations, plaintiff insists that the agency's reevaluation of proposals—at GAO's prompting—falls outside of the definition of "corrective action." See Pl.'s Reply 12 (citing to 4 C.F.R. § 21.8(e)); see also id. (arguing that no corrective action is taken when "DHRA has been dragged kicking and screaming to correct its defective award decision"); Tr. 12:20–13:8. It is the court's view, however, that the agency's reevaluation of the submitted proposals—to address the flaws that GAO identified in the original evaluation and contract award—constitutes "corrective action." See Sys. Application & Techs., Inc., v. United States, 100 Fed. Cl. 687, 709 (2011) (observing that corrective action takes place when an agency indicates a "clear . . . commit[ment] to a specific course of action; . . . [and is] not merely mulling various actions it might take"), aff'd, 691 F.3d 1374 (Fed. Cir. 2012); Metro. Van & Storage, Inc. v. United States, 92 Fed. Cl. 232, 252–53 (2010) (finding reasonable the agency's "corrective action," which was based on guidance "suggested by GAO").

The court has spoken directly to the type of challenge plaintiff makes here, stating that "[a]s a matter of law, anticipation of a future [procurement] violation is not sufficient to make a claim ripe." Brocade Commc'ns Sys., Inc. v. United States, 120 Fed. Cl. 73, 79 (2015); see also Eskridge Research Corp., 92 Fed. Cl. at 94 (citations omitted) ("A claim is not ripe where it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting Tex. Bio & Agro–Def. Consortium v. United States, 87 Fed. Cl. 798, 804 (2009)). But "[i]f at the end of [the reevaluation] process[,] the record shows that [the agency] did not properly carry out the corrective action by conducting a proper re-evaluation of proposals, [plaintiff] will have an opportunity to challenge the decision" the agency has made. Id. at 95.

Plaintiff's expressed concerns about the agency's conduct of the reevaluation process are purely speculative, and plaintiff's complaint that "reevaluation could take forever," Tr. 34:21, 33:8–33:9, is contradicted by the Contracting Officer's declaration that a final decision is anticipated by the end of this fiscal year. See Liedel Decl. ¶¶ 16, 19. As government officials, the Contracting Officer and agency personnel conducting the reevaluation are "presumed to act in good faith." Savantage Fin. Servs., Inc. v. United States, 595 F.3d 1282, 1288 (Fed. Cir. 2010). Absent evidence to the contrary, plaintiff's claims are merely conjectural.

To the extent plaintiff is challenging the reevaluation process the agency has taken by relying on "speculative and potential improprieties . . . without evidence of any actual wrongdoing by [the agency]," plaintiff's protest is not ripe for judicial review. Eskridge Research Corp., 92 Fed. Cl. at 94–95.

When, as here, "[p]laintiff's claims are premature, . . . the court has no jurisdiction." Brocade Commc'ns Sys., 120 Fed. Cl. at 79 (determining that the court lacks jurisdiction over speculative claims concerning the corrective action taken). Thus, plaintiff's protest as it relates to the agency's reevaluation of the submitted proposals is **DISMISSED** for lack of jurisdiction.

> C. Plaintiff's Challenge to the Agency's Decision to Allow IGH to Proceed with Contract Performance During the Reevaluation Period

Plaintiff challenges, and seeks to enjoin, the agency's decision to allow IGH to begin contract performance during the reevaluation period.[6] See Tr. 14:12–14:14; Tr.

---

[6] Although plaintiff challenged the characterization of the reevaluation as a "corrective action" by offering a narrow definition of what properly can constitute such action that the court, in turn, rejected (see supra note 5), plaintiff posed no objection to the fact that the agency is undertaking the reevaluation as GAO recommended, see Tr. 32:24–32:25 (maintaining that it is "not quibbling . . . [about whether the agency is] going to do the reevaluation"); see also Tr. 33:5–33:6.

8

16:8–16:9; Tr. 33:23–34:3.  Plaintiff insists that the agency could have, and should have, further extended the bridge contract with plaintiff's alleged teaming partner IIF Data (one of the two incumbent contractors) during this time.  See Compl. ¶ 18 (complaining that "other options exist for the agency to receive these services"); Tr. 10:24–11:1 (insisting that the agency "should have awarded a bridge contract [instead of] starting [contract] performance with IGH"); Tr. 8:4–8:8 (asserting that "[i]f the [g]overnment had properly done its job, [it] could have awarded, again, bridge contracts to the existing contractor, IIF Data").  Effectively, plaintiff objects to the manner in which the agency chose to meet its interim FEPP needs during the two-month period afforded for the reevaluation process.  See Tr. 20:16–20:20 (describing the "two courses of action" contemplated by the agency).

Plaintiff, however, has failed to identify a jurisdictional basis for the court to hear its objection to the agency's decision to proceed with contract performance by the awardee pending reevaluation of the submitted proposals.  The court's bid protest jurisdiction is defined by 28 U.S.C. § 1491(b)(1).  As prescribed by the statute, the court may hear "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  Plaintiff's challenge to DHRA's decision to allow IGH to begin contract performance while the submitted offers are being reevaluated does not fall within the court's prescribed jurisdiction.

Because the challenged agency action is not an objection to "a solicitation," nor "a proposed award or the award of a contract,"[7] plaintiff must allege that the agency's action has violated "a statute or regulation in connection with a procurement or proposed procurement" for the court to exercise such jurisdiction.  See 28 U.S.C. § 1491(b)(1); MORI Assocs., Inc. v. United States, 102 Fed. Cl. 503, 523 (2011) (finding where a procurement protest does not fall into the other categories under the Tucker Act, "the phrase 'or any alleged violation of statute or regulation . . . ' must be the vehicle by which" to establish jurisdiction); see also RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("Where an agency's actions under a statute so

---

[7]      To the extent that plaintiff asserts that the agency "wholly ignore[d]" GAO's recommendation, it is plaintiff—not the agency—that has chosen not to take notice of GAO's recommendation.  GAO did not recommend vacating the contract award to IGH.  Nor did it recommend that the agency exercise its option to further extend the contracts with the two incumbents.  Rather, GAO recommended that if the agency found on reevaluation that "a proposal other than the one submitted by IGH represents the best value to the government, . . . the agency [should] terminate the contract awarded to IGH for the convenience of the government, and make [an] award to the newly-selected offeror."  See Metis Sols., 2015 WL 4572442, at *13.  Nothing in GAO's decision expressly counsels against the action the agency took.

clearly affect the award and performance of a contract, this court has little difficulty concluding that that statute has a 'connection with a procurement.'").

But plaintiff here does not do so. Instead, plaintiff offers only bare assertions to express its dissatisfaction with the manner in which the agency chose to proceed. Plaintiff points to no authority preventing the agency from taking the course of action that it did. Plaintiff's assertion "that other options exist for the agency to receive these services," see Compl. ¶ 18, does not make the option the agency did choose illegal or wrong, where no violation of a procurement statute or regulation has been identified. Defendant observes that there was no legal impediment to proceeding as the agency elected, see Tr. 20:17–20:20, and the court does not find otherwise.

Even if plaintiff's third challenge were to be construed as an objection to an agency action falling within the court's bid protest jurisdiction, plaintiff nevertheless fails to establish standing as an "interested party" to request the relief it seeks. See Def.-Int.'s Resp. 10–13.

"[P]ivotal" to this court's exercise of its bid protest jurisdiction is "whether a protestor qualifies as an 'interested party' under [Section] 1491(b)(1)." RhinoCorps Ltd. Co. v. United States, 87 Fed. Cl. 481, 485 (2009); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012). Although the Tucker Act authorizes an "interested party" to file a bid protest, it does not define this term. The Federal Circuit has supplied the definition of "interested party" set forth in the Competition in Contracting Act, 31 U.S.C. § 3551(2), for use by the court. Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). As defined, an "interested party" is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting 31 U.S.C. § 3551(2)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

As clarified at oral argument, plaintiff lacks the "direct economic interest" required to assert standing as an "interested party" to challenge the agency action it seeks to enjoin. Because plaintiff is not an incumbent contractor, it is not "in a position to perform those services itself as a prime contractor to the agency." See Tr. 23:16-23:20. Plaintiff instead seems to assert standing by relying on the economic interest of its alleged teaming partner IIF Data, one of the two incumbent contractors who performed part of the predecessor contract. But claiming status as IIF Data's teaming partner does not assist plaintiff. IIF Data is not a party to this action, and "[i]t is . . . black letter law that a plaintiff does not, . . . [generally] have standing to enforce the rights of third parties." MED Trends, Inc. v. United States, 101 Fed. Cl. 638, 646–47 (2011); see also id. at 647 ("[P]laintiff cannot seek to enforce [the] rights [of other parties] in this bid protest[,] [n]or can plaintiff point to [other parties'] alleged injuries for the purpose of

10

establishing its own standing."). Plaintiff cannot demonstrate that it has any direct economic interests that are implicated by the challenged agency action as the reevaluation process takes place. As counsel for defendant-intervenor observed during oral argument, "[a]t best, [plaintiff] might be seen as a disappointed subcontractor, [however, that status] is inadequate to convey standing." Tr. 28:3–28:5; cf. Int'l Genomics Consortium v. United States, 104 Fed. Cl. 669, 674 (2012) (finding that a disappointed subcontractor lacked standing to object to award not made to the prime contractor, and that "plaintiff was not . . . an 'interested party,' as that term is used in section 1491(b)(1) of Title 28").

Plaintiff does not challenge an agency action that falls within the court's bid protest jurisdiction. Moreover, even if plaintiff could identify a jurisdictional basis for the court to hear its third challenge, plaintiff cannot establish that it has standing to challenge the agency's decision to allow the contract awardee to perform pending the agency's reevaluation of offers. See Hughes Grp., LLC v. United States, 119 Fed. Cl. 221, 225–26 (2014) (finding that plaintiff did not have the direct economic interest required to qualify as an interested party and dismissing plaintiff's protest for lack of jurisdiction). Accordingly, plaintiff's protest as it relates to contract performance by IGH during the reevaluation period is not a claim over which this court has bid protest jurisdiction and thus, is **DISMISSED**.

III. Conclusion

Plaintiff seeks a preliminary injunction, but fails to explain how this court has jurisdiction over its claims. The court finds that: (1) plaintiff's challenge to the original contract award to IGH is moot; (2) plaintiff's challenge to the reevaluation of the proposals is not ripe; and (3) plaintiff's challenge to contract performance by IGH during the reevaluation period is beyond the scope of the court's bid protest jurisdiction.

Without jurisdiction, the court cannot hear plaintiff's claims. Accordingly, plaintiff's complaint is **DISMISSED** for lack of jurisdiction. Plaintiff's motion for preliminary injunction is **DENIED AS MOOT**.

Plaintiff's request for an award of its "reasonable costs and attorneys' fees," see Compl. 9, is also **DENIED**. Plaintiff fails to explain the basis upon which it could be entitled to such costs. Moreover, pursuant to the court's bid protest jurisdiction under the Tucker Act, "any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge